OTTO KURCSICS, Respondent-Appellant, v MERCHANTS MUTUAL INSURANCE COMPANY, Appellant-Respondent.

Fourth Department, December 15, 1978

## APPEARANCES OF COUNSEL

*Wilkin, Good, Lopat & Beyer (Lawrence H. Wagner* of counsel), for appellant-respondent.

*Dobozin & Pottle (Willard M. Pottle, Jr.,* of counsel), for respondent-appellant.

*Louis J. Lefkowitz, Attorney-General (Samuel Hirshowitz* and *Eileen A. Shapiro* of counsel), for Superintendent of Insurance, *amicus curiae.*

### OPINION OF THE COURT

WITMER, J.

This appeal depends upon the meaning of "first party benefits" in article 18 of the Insurance Law (§§ 670-678), New York's Comprehensive Automobile Insurance Reparations Act, providing for no-fault insurance protection to "covered persons" and requires us to construe that law with particular reference to paragraph (a) of subdivision 2 of section 671 thereof. Plaintiff has lost in excess of $1,000 per month in earnings since his motor vehicle accident on April 1, 1977, but defendant insurance carrier has paid him only 80% thereof, to wit, $800 per month. In this action plaintiff seeks judgment declaring that defendant must pay him 100% of his lost earnings up to $1,000 per month. The question appears to be one of first impression in the appellate courts of this State.

Plaintiff was injured while riding a motorcycle on April 1, 1977, as a result of which he has sustained monthly loss of earnings since that date in the sum of $1,400. At that time an operator of a motorcycle was equated to a pedestrian or bicyclist, and was a "covered person" under subdivision 10 of section 671 of the Insurance Law (see 1 NY PJI2d 217, 1978 Supp, pp 39-40).* The insurer of the operator of the automobile with which plaintiff collided is the defendant, Merchants Mutual Insurance Company. It had issued a policy of liability insurance on the automobile with which plaintiff collided, and the policy complies with the requirements of section 672 of the Insurance Law. Plaintiff satisfied defendant that he was sustaining lost earnings in excess of $1,000 per month and, pursuant to defendant's interpretation of paragraph (b) of subdivision 1 and paragraph (a) of subdivision 2 of section 671 of the Insurance Law, it has paid to plaintiff as no-fault "first party benefits" the sum of $800 per month from the date of the accident. No question of medical expenses is presented in

---

* By amendment effective December 1, 1977 a motorcycle is deemed to be a motor vehicle under the no-fault insurance law, and its rider and passenger, if injured, must look to the insurer thereof for compensation (Insurance Law, § 672, subd 6; and see 1 NY PJI2d 217, 1978 Supp, p 40).

this case; nor are we concerned with an injured person's right to maintain a tort action in case of serious injury.

Claiming that the statute requires defendant to pay him $1,000 per month for lost earnings, plaintiff instituted this declaratory judgment action to require defendant to pay him the remaining $200 per month from the date of the accident, plus 2% interest thereon and attorneys' fees as provided in section 675 of the Insurance Law. Special Term granted plaintiff's motion for summary judgment upon the complaint. Special Term wrote a thoughtful memorandum in support of its decision and held that the Legislature did not mean, by paragraph (a) of subdivision 2 of section 671 of the Insurance Law, to reduce by 20% the basic economic loss of earnings (up to $1,000 per month for not more than three years from the date of the accident) as defined in paragraph (b) of subdivision 1 of that section, which Special Term held that the Legislature meant to be paid to a covered person. It was the court's view that the provision was inserted in the statute to solve an income tax problem, and that under defendant's interpretation insurance companies instead of covered persons would be getting the benefit of 20% of the wages lost under $1,000 per month. It should be observed that, contrary to the analysis of the statute made by Special Term, section 671 of the Insurance Law makes no provision for payments to or for injured persons—it only contains definitions which, as terms of art, are used in the related sections of the act wherein the rights and obligations of covered persons and others are provided.

In view of the history of the no-fault law in its enactment and its interpretation by scholars, by the State Superintendent of Insurance in his promulgated regulations and by others, we disagree with Special Term.

The pertinent portions of section 671 of the Insurance Law are as follows:

"1. 'Basic economic loss' means, up to fifty thousand dollars per person: * * *

"(b) loss of earnings from work which the injured person would have performed had he not been injured, and reasonable and necessary expenses incurred by such person in obtaining services in lieu of those that he would have performed for income, up to one thousand dollars per month for not more than three years from the date of the accident causing the injury * * *

"2. 'First party benefits' means payments to reimburse a

person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle in this state, less:

"(a) twenty percent of lost earnings pursuant to paragraph (b) of subdivision one of this section".

In the course of presenting the no-fault legislation to the Legislature for its consideration, Senator Gordon, Chairman of the State Insurance Committee, explained and defended the provision in paragraph (a) of subdivision 2 of section 671 which provides for the reduction by 20% of the amount of lost earnings as defined in paragraph (b) of subdivision 1 of that section, stating:

" 'We have provided for loss of earnings from work for up to three years in the sum of $1,000 a month, and I will immediately clarify the question that was raised to me. If you are out one day, you do not get $1,000 worth of loss of earnings. That would be prorated, certainly, but from the $1,000 we deducted 20 percent, and I know Senator Griffin has been very concerned about the 20 percent and whether it might not be 15 percent or even 10 percent, and I want to point out that the 20 percent deduction from the $1,000 was predicated on the fact that the gross payment to the victim would not be subject to income tax. It would not be subject to Social Security payments, and, incidentally, Senator, Social Security payments amount to almost 6 percent. I think it is 5.8 percent, so you subtract that from the 20 and you are getting closer to the figure that you would be interested in.

" 'Many people today are at least in the 15 percent category, so that again when you are adding 15 and almost 6, you are over the 20 percent immediately.

" 'We felt also that the provision for coming back to work or inducing people to come back to work should be attractive enough in the sense that if they are going to take the deduction—we did not want them malingering—and that they should return to their jobs.' " (Report of Joint Legis Committee on Ins Rates, Regulation and Recodification of Insurance Law, NY Legis Doc, 1973, No. 18, p 10.)

At the time of its enactment in 1973 a summary and an analysis of New York's no-fault law was made by James N. Benedict in an article entitled New York's No-Fault Act, published in 37 Albany Law Review 662. Therein, at pages 682 and 689-690 the author recognized that paragraph (a) of subdivision 2 of section 671 of the Insurance Law defines "first

party benefits" as limited to 80% of a covered person's lost earnings, as defined in paragraph (b) of subdivision 1 of that section, to be paid to the injured person, and he added, "This 20 percent deduction is intended to reflect the income tax savings enjoyed by the 'covered party' by the receipt of a tax-exempt insurance award in lieu of taxable income" (p 690). In footnote 142 thereto he observed that in other States which had enacted no-fault insurance laws, some made no deduction, several provided for a 15% deduction from lost earnings; Massachusetts had a 25% deduction and Oregon a 30% deduction. As Senator Gordon observed in the above quotation, New York's 20% deduction also takes cognizance of the Social Security tax.

In Cases and Materials on Torts (6th ed) by Prosser, Wade and Schwartz (1976) (pp 1217-1219) the authors recognize the above interpretation of the no-fault law and suggest that this reduction of benefits to 80% of earnings up to $1,000 per month is a form of negative application of the collateral source principle. The no-fault law takes advantage of the fact that had the injured party continued to work he would not have received the benefit of 20% of his earnings because of tax deductions therefrom; and in the interest of saving costs of the automobile liability insurance system, the benefits are reduced accordingly.

The Superintendent of Insurance of the State of New York, authorized to adopt regulations for the administration of the Insurance Law (Insurance Law, § 21), has interpreted paragraph (a) of subdivision 2 of section 671 in accordance with the foregoing understanding, in his regulations adopted to implement the administration of the statute (11 NYCRR 65.6 [n] [2] [xi]). The interpretation of the law, if not in outright conflict therewith, made by the Superintendent of Insurance who is charged with its administration, is of course an important guide for the courts (Ostrer v Schenck, 41 NY2d 782, 785-786). In 1 NY PJI2d 217 and 1 NY PJI2d 642 and the comments thereunder in the 1978 supplement at pages 42-43 and 140 the foregoing interpretation of section 671 of the Insurance Law is accepted as correct.

In Montgomery v Daniels (38 NY2d 41, 46-47) the court analyzed New York's no-fault insurance law and with respect to this subdivision wrote, "Compensation for basic economic loss is payable as 'first party benefits' after reducing the gross amount of such loss by deducting (a) 20% of 'lost earnings'

(§ 671, subd 2, par [a]), (b) all amounts recoverable under State or Federal laws providing social security disability benefits or workmen's compensation benefits (§ 671, subd 2, par [b]), and (c) amounts deductible under the applicable insurance policy (§ 671, subd 2, par [c])."

In *Strain v Kechbaum* (83 Misc 2d 1066, 1067) Mr. Justice ARTHUR C. AULISI recognized that the theory of New York's no-fault statute, limiting an injured person to recover only 80% of his lost earnings, is "that the plaintiff has not been damaged [with respect to the remaining 20%], since the income tax which might normally be withheld from wages would be offset by the receipt of income tax free 'first party benefits'."

The apparent purpose of the provision in the no-fault law for limiting first-party benefits to 80% of lost earnings up to $1,000 per month was to aid in the reduction of general costs of automobile liability insurance, to the end that annual policy premiums will be kept reasonable and affordable. The Legislature deemed that such limitation in payment is fair because it reimburses the covered persons for his real net loss of earnings, considering the deductions from earnings through income and Social Security taxes. The provision also has the concurrent benefit of avoiding payment to an injured person of a windfall sum in excess of his net earnings after taxes, and thus removes from him the temptation not to return to work as soon as he is able.

It is not for the court to consider the wisdom of the Legislature's enactment, nor whether it could have contained more equitable provisions. Our function is only to interpret the law as enacted.

We conclude that defendant has properly interpreted the statute and has been paying to plaintiff the correct amount ($800 per month) for lost earnings. Since plaintiff is, therefore, entitled to no increase in his monthly payments, his application for interest on deficiency payments and for attorney's fees for collecting them must fall.

The judgment should, therefore, be modified, to reverse and delete the provisions interpreting section 671 of the Insurance Law as requiring defendant to increase its monthly payments to plaintiff to the sum of $1,000 retroactive to April 1, 1977 and directing defendant to make such payments, and, as modified, affirmed.

MARSH, P. J., DILLON, HANCOCK, JR., and SCHNEPP, JJ., concur.

Judgment unanimously modified, on the law, and, as modified, affirmed, without costs in accordance with the opinion by WITMER, J.