*669 OPINION OF THE COURT
John A. Mastrella, J.
Plaintiffs, Glen Hughes and Mae E. Hughes, have brought this action against the defendant, Nationwide Mutual Insurance Company, their automobile insurance carrier, for the recovery of first-party benefits under article 18 of the Insurance Law, the Comprehensive Automobile Insurance Reparations Act.
This action raises the question of whether a farmer and his wife are entitled to recovery of first-party benefits under subdivision 1 of section 671 of the Insurance Law in the situation where a farmer’s wife is injured in an automobile accident and for a period of time is unable to perform both her household duties and her work on the farm.
The plaintiffs owned and operated a farm in Dansville, New York, doing business as Hillcrest Farms. The farm, located on 166 acres of land, was primarily operated as a dairy farm having 65 dairy cows and 500 egg-laying chickens. Hay, oats, wheat, corn, and alfalfa were grown for market, and Glen Hughes was also a contract harvester.
At a nonjury trial Mrs. Hughes testified that she did all the housework and also helped her husband run the farm. She testified that she drove the trucks at various times and helped with the baling of hay. She helped with the milkers and washed the bulk milk tanks. She testified that she shared the work connected with the 500 chickens seven days a week and took charge of the eggs produced. She also cultivated a vegetable garden which was primarily for home use.
Mr. Hughes testified that he and his wife shared the farm chores equally prior to the accident. While both he and his wife testified that they shared the farm income, they admitted that Mrs. Hughes was not formally paid any wages, nor was a W-2 income tax form prepared for her. Mr. Hughes testified that he had a hired hand, Robert Dunlop, from 1973 until August, 1975. Mr. Hughes was unable to obtain a replacement after Mr. Dunlop left. While employed at the farm Mr. Dunlop worked seven days a week for which he was paid $150 per week and was provided a house with all utilities paid, plus milk and vegetables for his family.
On December 23, 1974 Mrs. Hughes was involved in an automobile accident, and as a result of the serious injuries sustained, she was not able to perform any work on the farm and at the present time does solely housework.
*670 After Mrs. Hughes was injured Mr. Hughes and the hired hand absorbed her duties related to the farm, except for the housework. However, after Mr. Dunlop left, both Mr. and Mrs. Hughes testified that they sold all the dairy cows and milking equipment in November of 1975 because Mr. Hughes was unable to do all of the work himself. Additionally, several hundred chickens were disposed of so that only 100 egg-laying chickens remain on the farm.
On April 29, 1976 plaintiffs issued a demand to the Nationwide Mutual Insurance Company, under their automobile liability insurance policy, for payment of first-party benefits for wages lost by Mrs. Hughes. Nationwide denied their application and plaintiffs then commenced the present action.
Preliminarily, it should be noted that although plaintiffs could have elected to submit the present dispute to binding arbitration under the Insurance Law (§ 675, subd 2), the regulations of the Department of Insurance (11 NYCRR 65.7), and also the provisions of their insurance policy, this does not preclude their access to the courts as an alternative method of resolving a dispute as to coverage and entitlement to first-party benefits (Chapman v American Motorists Ins. Co., 88 Misc 2d 115, 116; see, generally, 29 NY Jur, Insurance, §§ 617, 618; Matter of Nassau Ins. Co. v McMorris, 41 NY2d 701; Kurcsics v Merchants Mut. Ins. Co., 65 AD2d 192).
Plaintiffs first claim that they are entitled to first-party benefits in the form of lost wages because Mr. Hughes was forced to undertake his wife’s duties on the farm after her accident. Plaintiffs calculated the wages lost as the value of Mrs. Hughes’ work on a four-hour per day basis, or 1,252 hours from December 23, 1974 to November 1, 1975, as the total sum of $2,779.44, less 20%; or $2,223.56 due and owing. In response, the defendant argues that recovery for lost wages which were never paid is not authorized by article 18 of the Insurance Law.
The statutory authority for payment of no-fault "basic economic loss” is set forth in the Insurance Law (§ 671, subd 1, par [b]) which defines such lost earnings as: "[L]oss of earnings from work which the injured person would have performed had he not been injured, and reasonable and necessary expenses incurred by such person in obtaining services in lieu of those that he would have performed for income”. Furthermore, the paramount legislative purpose is to assure "that every auto accident victim will be compensated for substan *671 tially all of his economic loss, promptly and without regard to fault” (Report of Joint Legis Committee on Insurance Rates, Regulation, and Recodification of the Insurance Law, NY Legis Doc, 1973, No. 18, p 7).
While courts hold that the no-fault insurance law should be interpreted to fulfill policies the Legislature had in mind, and generally in favor of the insured (Matter of Maida v State Farm Mut. Auto. Ins. Co., 66 AD2d 852; see, also, Colon v Aetna Cas. & Sur. Co., 64 AD2d 498, 503), where the statutory language is so clear as to belie any interpretation other than its express terms, courts are without power to enlarge or limit this unambiguous language (Marcus Assoc, v Town of Huntington, 45 NY2d 501, 505; see, also, Matter of Grossman v Herkimer County Ind. Dev. Agency, 60 AD2d 172, 178; McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 76, 94; 56 NY Jur, Statutes, §§ 114, 121).
In construing the phrase "loss of earnings from work”, it is apparent that only wages actually paid, or payable in the future, as provided by section 671 of the Insurance Law, are contemplated as compensable no-fault benefits. In the present case it is clear that Mrs. Hughes was not formally paid any wages from the farm operation, nor was she provided with a W-2 wage statement or listed as being paid any wages on the Hughes’ joint income tax returns for the tax years 1971 through 1975.* Additionally, no one was hired to perform the farm work previously done by Mrs. Hughes.
Since the Hughes’ automobile liability policy contains a definition of compensable work loss similar to section 671 of the Insurance Law, plaintiffs cannot receive additional coverage or benefits under their insurance contract (cf. 29 NY Jur, Insurance, § 23). Accordingly, this court holds that plaintiffs are not entitled to payment of first-party benefits in the form of lost wages under section 671 of the Insurance Law.
Plaintiffs alternatively claim that they are entitled to first-party benefits in the form of lost profits incurred on the farming operations as a result of Mrs. Hughes’ accident. In response defendant argues first that lost profits are not contemplated as "basic economic loss” under section 671 (subd 1, par [a]) of the Insurance Law because of its speculative na *672 ture, and next argues that if lost profits are recoverable there is a failure of proof in the instant case.
It should be noted that plaintiffs did not plead loss of profits as their theory of recovery, but only raised this point at trial as their proof developed and in posttrial papers submitted to the court. While there is authority under earlier practice and procedure that loss of profits had to be pleaded in order to be recoverable (13 NY Jur, Damages, § 120), under the present, more liberalized pleading practice, this failure to plead does not preclude them from asserting this claim (see, generally, CPLR 3016, subd [g]; Guggenheimer v Ginzburg, 43 NY2d 268, 275).
Although the issue of lost profits as recoverable first-party benefits was not specifically addressed by the Legislature, the definition of "basic economic loss” as "loss of earnings from work which the injured person would have performed had he not been injured” contained in the Insurance Law (§ 671, subd 1, par [b]) is broad enough to encompass profits from a business lost as a result of an automobile accident covered by no-fault insurance.
The following phrase in the same paragraph defining "basic economic loss” as "reasonable and necessary expenses incurred by such person in obtaining services in lieu of those that he would have performed for income”, reinforces this interpretation that lost profits are recoverable. To give this phrase proper meaning it can only be contemplated that a small and privately owned business which operates on a profits and loss basis would hire a replacement or contract out services after the owner becomes injured in an automobile accident.
A determination that lost profits are recoverable will advance the legislative purpose that all accident victims will be quickly compensated for substantially all of their economic loss for nonmajor claims, without regard to fault. There is no manifest intent to exclude self-employed individuals from recovering lost profits under article 18 of the Insurance Law, and no such exception should be presumed or even implied in the absence of express statutory language (56 NY Jur, Statutes, §§ 248, 249; 82 CJS, Statutes, § 382, pp 889, 894). To hold otherwise would often penalize the self-employed individual who does not take formal wages from the business, keeping only the profits. This would cause such an individual to suffer serious economic harm, because the person would be in the untenable position of not being compensated for lost earnings *673 in situations involving nonmajor claims from automobile accidents. This ruling is especially important for farmers because small and even medium-sized farms are often family owned and operated (cf. 15 Couch, Insurance [2d ed], § 53:255, p 221). It is traditionally the situation, as in the present case, that a husband and wife operate a farm and each individual is allocated certain tasks which together comprise the complete farm operation.
Accordingly, the court holds that lost profits are recoverable in appropriate cases under section 671 of the Insurance Law. Having made such determination, the applicable standards to gauge such recovery must be established since the statute is devoid of guidelines.
Under common law lost profits are recoverable as an element of damages, often for the loss of time or service, where they result as the natural and probable consequence of a tortious act (13 NY Jur, Damages, §§ 108, 109; 25 CJS, Damages, § 90; see, also, 7A Warren’s NY Negligence [3d ed], Personal Injuries, § 7.01). Also, the Fourth Department has stated: "So too, profits may be considered in some cases because they reflect the value of lost time or diminished earning capacity to an injured party or they are parasitic to personal or property claims” (Dunlop Tire & Rubber Corp. v FMC Corp., 53 AD2d 150, 155). In New York it also appears that net profits provide the proper basis for such an award (see cases cited in 25 CJS, Damages, § 90, p 976).
Although lost profits do not have to be proven with exactitude, they must be demonstrated with sufficient certainty and not be speculative or contingent (Dunlop Tire & Rubber Corp. v FMC Corp., supra, pp 155-156; 342 Holding Corp. v Carlyle Constr. Corp., 31 AD2d 605; see, also, Walsh v New York Cent. & Hudson Riv. R. R. Co., 204 NY 58, 68; Contemporary Mission v Famous Music Corp., 557 F2d 918, 926). Plaintiff must supply some reasonable basis for computation (Broadway Photoplay Co. v World Film Corp., 225 NY 104, 109; 13 NY Jur, Damages, § 108, p 583). Further, recovery for lost profits will usually be permitted only where a business has been in operation for a period of time and the business is firmly established (Bankers Trust Co. of Western N. Y. v Steenburn, 95 Misc 2d 967; Mullen v Jacobs, 58 Misc 2d 64, 68).
Additionally, profits lost from farming operations have been held to be the proper basis for an award in common-law tort actions in New York, and the leading case is Steitz v Gifford *674 (280 NY 15). In this case plaintiff, a farmer, sustained personal injuries while operating a truck with a trailer loaded with farm produce which was involved in a collision with an automobile owned and operated by the defendant. As a result of these injuries, plaintiff was unable to harvest a sufficient number of ears of corn to fulfill his previously made contracts for delivery. He was even unable to deliver the corn he was able to harvest within the time specified in the contracts, and as a result, the corn was sold at a loss. The court held that the proper measure of damages in this case was the difference between the contract price and the cost of harvesting and delivery, which would have been the farmer’s net profit had he not been injured (280 NY 15, 21, supra). The court also stated the basis for its holding and noted the plaintiff’s unique situation as a farmer: "The business of plaintiff was specialized and depended upon his personal effort. The necessity for immediate exercise of that effort was present; time for harvesting and delivery of the corn could not be postponed. Contracts had been made which were required to be filled at specified times. The evidence indicated that it was impossible to procure anybody else who could do the work required for the plaintiff. No effort was made to show, the profits of the business nor was it claimed by plaintiff that any recovery could be based upon any such showing. The loss did not hinge upon the amount of invested capital as a predominant element in the production of income. * * * The evidence was directed solely to the question of the loss of the contracts based upon the contract price less the price of harvesting the corn and delivering it. The loss arose from plaintiff’s personal inability to operate his business for a single week * * * The loss naturally flowed from the accident.” (280 NY 15, supra; see, also, cases collected and discussion in Ann., 45 ALR3d 345, 381-389.)
Another court recently had occasion to award lost profits as part of the over-all damages to a farmer whose dairy cows had to be destroyed as a result of injuries incurred from the use of the defendant’s teat dip machine (Snyder v Bio-Lab, 94 Misc 2d 816). The court determined that as a direct and foreseeable consequence of the accident the farmer was entitled to three months’ compensation for the loss of profits from the reduced milk production (94 Misc 2d 816, 819-820, supra).
These standards developed under the common law to measure and assess for loss of profit and to provide adequate assurance that self-employed individuals and owners of small *675 businesses will be properly compensated for economic losses which directly and reasonably flow from a tort-feasor’s actions. Furthermore, there is no manifest or even indirect legislative intent in article 18 of the Insurance Law to exclude or modify these common-law standards. As the Court of Appeals has recently stated: "It is a general rule of statutory construction that a clear and specific legislative intent is required to override the common law” (Hechter v New York Life Ins. Co., 46 NY2d 34, 39).
Accordingly, this court holds that the standards used to measure loss of profits as damages in tort actions under the common law are applicable to measure compensable loss of profits as basic economic loss under article 18 of the Insurance Law.
Turning to the present case, it is apparent that there is a failure of proof as to any loss of profits from the farm operation incurred as a direct result of the injuries Mrs. Hughes sustained in the automobile accident. The only proof as to the income and expenses of the farm’s operations are the plaintiffs’ joint Federal income tax returns for the years 1971 through 1975 which show that the farm made a small profit for the 1971 and 1972 taxable years, and also reflect a loss for 1973, 1974, and 1975. All that is contained on these forms are lump-sum figures listed in general categories. Also, the figures reflecting income and expenses on these tax forms relate only to the computation of taxable income or a loss under the Internal Revenue Code. These forms do not provide any formula or reasonable method for measuring compensable damages in the form of profits from the farm’s operations for purposes of this action.
Stated differently, there is no specific and concrete proof of any profits lost from the milk and egg production or from the grain or vegetable produce operations which occurred as a direct result of Mrs. Hughes’ inability to perform her farm-related duties after the accident. Plaintiffs do not claim that they were unable to fulfill the terms of any contracts or meet specific commitments. Nor have they provided any facts as to the effect her disability had on the milking and egg production operations of the farm. No figures have been provided as to the actual amount of economic loss. Thus, any award of damages would be speculative.
Based upon the plaintiffs’ failure of proof, defendant is granted judgment dismissing the action.

 It should also be noted that with the exception of $300 in 1971, Mr. Hughes did not receive any income from the farm operations nor was a W-2 wage statement filed on his behalf during this period.