OPINION OF THE COURT
Edward M. Horey, J.
The action is for a money judgment for loss of earnings from work allegedly due the plaintiff under the provisions of section 671 of the Insurance Law, commonly denominated the “no-fault statute”.
Plaintiff is a self-employed building contractor operating under the firm and style of “Y & C Builders”. In March, 1978, plaintiff was involved in a serious automobile accident in Cuba, New York. At the time of the accident, plaintiff was driving an automobile owned by himself and insured for no-fault benefits by defendant, Utica Mutual Insurance Company.
The injuries suffered by plaintiff were so serious that he has, from the time of the accident to the present, remained totally disabled.
It appears from the record that the defendant, no-fault insurance carrier, has paid all medical bills of plaintiff as a first-party benefit and that such medical bills are not part of the litigation.
*418 This action deals only with the loss of earnings from work — part of the basic economic loss provided in the statute. Plaintiff is claiming the loss of such earnings in accordance with the provisions of section 671 (subd 1, par [b]) of the Insurance Law. That subdivision provides as follows: “1. ‘Basic economic loss’ means, up to fifty thousand dollars per person: * * * (b) loss of earnings from work which the injured person would have performed had he not been injured, and reasonable and necessary expenses incurred by such person in obtaining services in lieu of those that he would have performed for income, up to one thousand dollars per month for not more than three years from the date of the accident causing the injury”. At issue is the meaning to be imparted to this section.
Under the facts which have been presented, it appears that plaintiff was self-employed as a carpenter-contractor at the time of the injury. He was operating the business from his home. For the two years immediately preceding the accident, he had filed tax returns in which he claimed a tax operating loss from his sole enterprise business.
The 1976 tax return reflected that plaintiff had total sales from his business of $30,100. Against these earnings, plaintiff took deductions amounting to $30,830, resulting in a tax loss from operations of the business of $730.
The 1977 tax return reflects a greater loss than in 1976 based upon the following figures, to wit: Total receipts from sales in the business amounting to $63,166. Against such earnings, plaintiff took deductions amounting to $70,562, resulting in a tax loss from business operations of $7,396.
Because of the losses claimed on plaintiff’s tax returns from 1976 and 1977, it is the position of defendant insurance company that the plaintiff had no “earnings” and, therefore, under the language of section 671 (subd 1, par [b]) of the Insurance Law, defendant argues plaintiff is *419 precluded from being paid loss of earnings from work as a part of his “basic economic loss”, provided under that statute.
In support of its position, the defendant insurer argues that there have been a number of cases that have addressed the issue of what constitutes “earnings” under the statute. Defendant contends that under none of these would plaintiff recover as he is unable to demonstrate either (a) lost pay, or (b) cost of bringing another to perform the services, or (c) “loss of profits” occasioned by the injury and disablement. (See Hughes v Nationwide Mut. Ins. Co., 98 Misc 2d 667.)
Plaintiff, recognizing the dilemma, argues that under the statute there is a fourth way to show loss of earnings, viz., a loss of time resulting from the injuries. This “time loss” approach appears to have been first espoused by judicial determination in Wellington v City of New York, a 1980 New York Supreme Court case (NYLJ, Jan. 11, 1980, p 7, col 5). In the Wellington case, the court stated: “ ‘It is, therefore, apparent that there need be no actual income loss for the claimant to qualify for the benefit. There need only be a time loss resulting from the injury’ ”. (Quoting from Corrado v City of New York, Amer Arb Assn Case No. 1360-9464-77K, NF No. 710325.)
The ratio decidendi for the quoted conclusion in Wellington v City of New York (supra), that only a time loss was necessary, arises from the Judge’s analysis of an amendment to subdivision 2 of section 671 of the Insurance Law, which was passed in 1977. The amendment, according to the learned Judge, was designed to eliminate double recoveries of “earnings” in those situations where a claimant had received his pay under some arrangement with his employer, or otherwise, but had also sought recovery for no-fault benefits provided under an applicable insurance policy. The Judge concluded that if an amendment was necessary to eliminate a double recovery, that until the amendment was passed, there existed a right to double recovery. In support of the concept of double recovery and by way of explanation of it, he argued there could be read into the “no-fault law” a *420 precept that a true “economic loss” was not necessary; that merely a “time loss” would be sufficient. In brief, it appears the time loss concept was seized upon by the learned Judge to support his conclusion of permissible double recovery. As noted, for that proposition, he cited the Corrado case noted above and other decisions to the same effect.
It is important to note that Wellington v City of New York (supra) concerned an injury that resulted prior to the 1977 amendment of subdivision 2 of section 671 of the Insurance Law. It could now be argued that the amendment, besides purportedly eliminating double recoveries, also had the effect of eliminating the “time loss” theory that was advanced by the court to support the right to double recoveries in the Wellington decision and the other cases there cited.
This court does not believe the “time loss” theory should be discarded completely. This is because the amendment to subdivision 2 of section 671 of the Insurance Law, in this court’s opinion, only operated to remove the aspects of double recovery in the additional instances of “disability benefits under article nine of the workers’] compensation law, or medicare benefits”. The amendment did not provide for a general condemnation or elimination of all double recovery situations as the learned Justice suggests in the Wellington decision. However, the court believes there exists an additional, but firmer basis than the “time loss” theory on which to rest its decision.
As far as can be determined, the instant action is one of first impression under section 671 of the Insurance Law as it has been amended. Presented is a matter with far-reaching consequences. With only the help of his wife’s earnings of $4,150 in 1976 and $3,283 in 1977, the plaintiff was actually providing a living from the business for himself, his wife and his three adult children who live with him “off and on”. Undoubtedly that living was neither opulent or gracious, but it was sufficient to keep the plaintiff from the welfare rolls. The court regards the decision here as important because a judgment against the plaintiff, if sustained on appeal, and the *421 court has no doubt its decision will be appealed, will result in excluding a whole class of gainfully self-employed, but marginally successful individuals from benefits under the no-fault statute.
Such a result does not seem consistent to this court, with the legislative purpose of the no-fault statute. That purpose was to assure “that every auto accident victim will be compensated for substantially all of his economic loss, promptly and without regard to fault”. (Report of Joint Legis Committee on Insurance Rates, Regulation and Recodification of the Insurance Law, Legis Doc, 1973, No. 18, p 7.)
For situations such as is presented here, a careful analysis of the tax returns filed seems useful in resolving the issue of whether or not the plaintiff did in fact have “earnings” within the meaning of the statute. While it is true that the bottom line numbers in his tax returns for both 1976 and 1977 reflect a loss for the business, the numbers also reflect that plaintiff was actually using the funds generated by his business for strictly personal choices that happened to be business related.
For example, in 1977 from a business income of $33,484 (total sales $63,166, less cost of goods $29,682) plaintiff, in his tax return, took a $3,735 deduction for depreciation. This is a noncash expense permitted by the tax law and is related to the theoretical reduction in value of assets of the business overtime. However, it is not an actual expense by the business. Further, there is a $1,676 actual expense in 1977 for insurance. This is a choice plaintiff made on the utilization of his earnings from the business and is related to the business. However, again, it is a personal expenditure actually made by him. He could have opted not to purchase insurance and, accordingly, had the funds available to spend in some other way. Similarly, payment of interest on borrowings to continue future operations of the business in the amount of $769 was a personal choice. This expenditure is directly related to business continuance. Plaintiff was under no obligation to maintain his truck or license it for a future year of business. His expenditure of $108 *422 for license fees for business continuance was also a personal choice. The same may be said of union dues of $81.
Accordingly, if the 1977 tax return is analyzed accurately, it reflects the following optional or elective items of expense made for business continuance, to wit:
Depreciation $3,735
Insurance 1,676
Interest 769
Vehicle licenses 108
Union dues 81
Total $6,369
In 1976, by the same analysis, plaintiff had optional elective items of expenses as follows:
Depreciation $3,723
Insurance 908
Interest 1,014
Vehicle licenses 93
Union dues 108
Total $5,836
What is significant here is the choice made by the plaintiff in the use of the earnings made available to him. In 1977, he merely chose to put $6,369 back in the business rather than expend such sum for his personal whims or needs. The same is true of $5,836 in 1976. In brief, in the court’s opinion, the noted expenditures could have been avoided if the plaintiff had elected to end his business enterprise. Such expenditures only had the effect of placing the plaintiff in a position to continue his business. Their expenditure did not produce the yearly income of the business. The point is lost unless it is considered that the plaintiff was under no obligation to continue the business. Termination of the business was an option which was available to him. Defendant insurance company now seeks to penalize the plaintiff for the decision which the plaintiff made.
*423 This court is certain of only one thing and that is a determination of earnings under the no-fault statute are not properly made for the operator of a sole enterprise business by the result of profit or loss reflected in a claimant’s income tax return. There are different considerations that attend each determination.
To conclude, the no-fault law of the State provides that an accident victim is entitled to be reimbursed for “loss of earnings from work which the injured person would have performed had he not been injured” (Insurance Law, § 671, subd 1, par [b]). Such language does not say “profits” or “net taxable earnings”, but rather requires only “earnings”.
In this court’s opinion, the proper construction to be given to the statutorily undefined word “earnings” in section 671 (subd 1, par [b]) of the Insurance Law, in the instance of an operator of a sole enterprise business is to attribute to it the meaning of what is left of earnings after deducting all necessary or mandated items of expense incident to the operation of the business, but excluding from such deduction any optional or elective items of expense made for its continuance.
The court has studiously avoided, in its decision, and in particular, in its definition of “earnings” the employment of such terms as “gross earnings”, or “net earnings” or “net income” or “gross income”, etc., because the briefest recourse to words and phrases and case law determinations, discloses the myriad of meanings which can be given those terms. The court concedes the term “earnings” may not always carry the same definite and inflexible meaning under all circumstances that the court has given it here, but, in the opinion of the court, the meaning to be accorded should depend upon the subject under consideration, the connection in which it is used and most importantly, the results intended to be accomplished. In fashioning its definition, the court has tried to meet such criteria. How successful it has been will await the exciting episodes of appellate review.
Since the plaintiff has demonstrated “earnings” within the meaning that the court holds should be given that *424 term and has proven his loss thereof, he has thus sustained “loss of earnings from work” which as an injured person he would have performed had he not been injured, all within the meaning of the statute. Thus, the court holds the plaintiff entitled to the benefits provided under section 671 (subd 1, par [b]) of the Insurance Law. They are part of the plaintiff’s “basic economic loss”.
The quantum of recovery provided under the statute for loss of earnings is the amount of the lost earnings “up to one thousand dollars per month for not more than three years from the date of the accident causing the injury”. (Insurance Law, § 671, subd 1, par [b].)
In his complaint, the plaintiff demanded judgment in the amount of $6,510 for lost earnings “and appropriate increments to the date of trial”. The time elapsing from the date of the accident (March 29, 1978) to the date of trial (May 13, 1980) was 25 months and 13 days. However, a stipulation was made at the beginning of the trial between the attorneys for the plaintiff and the defendant that this action would be limited to a six-month period of disability extending from April 1, 1978 to October 1, 1978. This is without prejudice to the plaintiff to seek additional sums in other actions.
In a form prepared by it, the defendant demanded that the plaintiff submit copies of income tax returns for two years prior to the accident in connection with demand for compensation for lost earnings. Upon trial, no proof was offered of the value of substitute hire for the injured plaintiff. Understandably, but perhaps regretably, the only proof submitted by the plaintiff for determination of lost earnings were the tax returns of the plaintiff for 1976 and 1977, the two years prior to the accident.
Upon a finding now made that the plaintiff’s average monthly earnings were $508, the court holds the plaintiff entitled to $3,048 (computed at $508 per month times 6 months). There is to be no reduction of this monthly benefit by dint of the provisions of section 671 (subd 2, par [a]) of the Insurance Law providing for a 20% reduction of lost earnings. That subsection is not applicable here. (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451.) *425 Accordingly, it is directed that judgment be entered in favor of the plaintiff and against the defendant for $3,048.
“Statutory interest” prayed for in the complaint is also allowed. Subdivision 1 of section 675 of the Insurance Law provides that: “[a]ll overdue payments shall bear interest at the rate of two percent per month”. Such statutory interest shall be computed on each of the six monthly increments of $508 previously allowed. It should be computed from the date of accrual of each monthly increment which is determined to be the 29th day of the month, with the accrual date on the first increment of $508 determined to be April 29, 1978.
In his complaint, plaintiff prayed for the allowance of reasonable attorney’s fees. These are permitted under the provisions of subdivision 1 of section 675 of the Insurance Law.
Upon trial, defendant’s attorney stipulated with plaintiff’s attorney that if expert evidence was produced by the plaintiff it would demonstrate that the reasonable time expended for legal services on behalf of the plaintiff would be 28.25 hours and that $60 per hour was the reasonable rate of compensation for such legal services. Nothing being offered in opposition to the claimed time and rate, reasonable attorney’s fees for plaintiff are allowed and fixed at $1,695 (computed at 28.25 hours at $60 per hour).