Carolyn TOLLEY, Plaintiff,

v.

AMERICAN TRANSIT INSURANCE
COMPANY, Defendant.

No. 83 Civ. 8422 (RJW).

United States District Court,
S.D. New York.

July 11, 1986.

Robert W. Cinque, P.C., New York City, for plaintiff.

Gonzalez & Bisceglia, New York City, for defendant.

## OPINION

### ROBERT J. WARD, District Judge.

In this diversity action, plaintiff seeks to recover damages under New York's no-fault law, as recodified, N.Y.Ins.Law § 5101 *et seq.*, from the insurer of a company from whom plaintiff prevailed in a previous personal injury action. Plaintiff moves pursuant to Rule 56(a), Fed.R.Civ.P., for summary judgment in the amount of $47,-906.39, based upon the jury verdict and final judgment entered in the previous action. Defendant cross-moves for partial summary judgment against plaintiff on the grounds that it should not be bound by the verdict entered in the earlier suit, and that plaintiff's recovery of medical expenses and lost earnings under the New York no-fault statute must be limited to expenses and/or losses she has in fact incurred. For the reasons that follow, the cross-motions are granted in part and denied in part.

## BACKGROUND

The instant action, like the personal injury suit that preceded it, arises from a collision that occurred at an intersection in Queens on October 15, 1982 between a taxicab, in which plaintiff was a passenger, and another vehicle. In December 1982 plaintiff filed a diversity suit in this Court against Gas Transportation Corporation ("GTC"), the owner of the cab, Nathan Edwards, the driver of the cab at the time of the accident, and Leopoldo Ulloa and Israel Nieves, the operator and owner of the other vehicle involved in the collision.

*Tolley v. GTC,* 82 Civ. 8486(RJW) (S.D. N.Y.) (*"Tolley I"*). Although not formally joined as a party in that action, American Transit Insurance Company ("ATI"), the defendant here, undertook the defense of GTC in that proceeding pursuant to the terms of an insurance contract then in effect between the two entities.

The parties in *Tolley I* proceeded to a jury trial, at which the Court received testimony from plaintiff, defendants Edwards and Ulloa, the police officer who investigated the accident, an inspector from the Taxi and Limousine Commission who had inspected the taxicab approximately a month before the accident, and two dentists who examined plaintiff after the collision. On October 21, 1983, the jury entered a verdict in plaintiff's favor, apportioning fifty percent liability each to GTC/Edwards and Ulloa/Nieves. On the question of damages, the jury answered several special interrogatories as follows:

. . . .

6. What are the total damages sustained by the plaintiff for her pain and suffering?
$65,000.00
7. What loss of earnings, if any, do you find that the plaintiff sustained during the period October 15, 1982 through October 15, 1983 as a result of the happening of the accident?
$8,800.00
8. What loss of earnings, if any, do you find that the plaintiff will sustain during the period October 15, 1983 through October 15, 1985 as a result of the happening of this accident?
$10,000.00
9. What loss of earnings, if any, do you find the plaintiff will sustain after October 15, 1985 as a result of the happening of this accident, and for how many years will this loss of earnings continue?
$50,000.00
10 Years
10. What medical expenses, if any, do you find that the plaintiff will incur during the period October 15, 1983 through

October 15, 1985 as a result of the happening of this accident?

$3,000.00

11. What medical expenses, if any, do you find that the plaintiff will incur after October 15, 1985 as a result of the happening of this accident, and for how many years will these medical expenses continue to be incurred?

$30,000.00

50 Years

The Court entered judgment against the four defendants in *Tolley I* on November 14, 1983, in the amount of $121,000.00 plus interest and costs. This figure was arrived at by taking the jury's verdict of $166,800, adding $4,200, which the parties had stipulated were medical expenses plaintiff had already incurred, and then subtracting $50,000, the maximum amount plaintiff might recover under New York's no-fault statute, *see* N.Y.Ins.Law § 5102(a). On March 22, 1984, the Second Circuit Court of Appeals affirmed the judgment of this Court in an unpublished decision.

In the interim, plaintiff commenced the instant action (*"Tolley II"*) by filing a complaint and motion for summary judgment. In the present lawsuit, she seeks to recover from ATI the sum of $47,906.39, which represents the difference between the $50,-000 the Court deducted from the jury's verdict in *Tolley I* and $2,093.61, which plaintiff concedes she has received as partial reimbursement for medical expenses incurred. Plaintiff contends in the instant motion that the net amount represents "first party benefits" to which she is entitled under N.Y.Ins.Law § 5102(b), and that ATI is collaterally estopped from contesting its liability for that amount by virtue of the jury's findings on damages in *Tolley I.* ATI cross-moves for summary judgment, both with regard to the preclusive effect that may be given the *Tolley I* jury verdict in this action, and regarding the extent of plaintiff's "basic economic loss" within the

meaning of the New York no-fault statute. *See* N.Y.Ins.Law § 5102(a).

### DISCUSSION

At the outset, the Court need only restate briefly the familiar standard against which the instant cross-motions must be judged. Summary judgment for either party is appropriate only if that party can establish both that there are no genuine issues as to any material fact and that the party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. On a motion for summary judgment, the Court's task is not to resolve disputed issues of fact, but to determine what issues, if any, remain to be tried. *Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975); *Lord Jeff Knitting Co., Inc. v. Warnaco, Inc.,* 594 F.Supp. 579, 580 (S.D. N.Y.1984). Although "[u]ncertainty as to the true state of any material fact [will] defeat[ ] the motion," *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor,"* 691 F.2d 603, 606 (2d Cir. 1982), disputes over irrelevant facts cannot obscure the absence of a material dispute. *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.,* 769 F.2d 919, 923 (2d Cir.1985).

In the within cross-motions, the parties dispute two principal issues: first, the extent to which defendant may be bound in this proceeding by the jury's findings in *Tolley I* against, *inter alia,* GTC, one of defendant's policyholders; and second, the extent to which plaintiff may recover future medical expenses and lost earnings from defendant as "first party benefits" within the meaning of N.Y.Ins.Law § 5102(b). The Court will examine these questions in turn.

### 1. Preclusive Effect of *Tolley I*

The parties appear to assume—and the Court sees no reason to doubt—that New York substantive law applies to the claims and issues raised in the instant case.[1] The

---

1. In this diversity action, the Court must apply the law of the forum state, New York, including the forum's choice of law principles. *Klaxon*

*Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Hunter v. H.D. Lee Co., Inc.,* 563 F.Supp. 1006, 1008 (N.D.

Court therefore looks to New York law to determine what preclusive effect, if any, the jury's findings on damages in *Tolley I* should be given in this action. As it has been interpreted by the New York courts, the doctrine of collateral estoppel is intended to reduce litigation and conserve the resources of both courts and litigants by preventing a party from relitigating an issue that has already been decided against it. *Kaufman v. Eli Lilly and Co.*, 65 N.Y.2d 449, 455, 482 N.E.2d 63, 67, 492 N.Y.S.2d 584, 588 (1985). Two requirements must be satisfied, however, for the doctrine to be invoked.

First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination.

*Id.*, 65 N.Y.2d at 455–56, 482 N.E.2d at 67, 492 N.Y.S.2d at 588; *Gilberg v. Barbieri*, 53 N.Y.2d 285, 291, 423 N.E.2d 807, 809, 441 N.Y.S.2d 49, 51 (1981); *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71, 246 N.E.2d 725, 729, 298 N.Y.S.2d 955, 959–60 (1969).

■ The "full and fair opportunity" prong of the collateral estoppel doctrine derives from the fundamental principle that each party to a litigation is entitled to his or her day in court. Generally, therefore, a person will not be precluded from litigating issues that were resolved in a previous action in which that person was not a party. *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 485–86, 386 N.E.2d 1328, 1331, 414 N.Y.S.2d 308, 311 (1979). On the other hand, the "parties to a judgment" for collateral estoppel purposes may include more than the individuals formally joined in the suit. "For example, collateral estoppel bars not only parties from a previous action from litigating an issue decided therein, but those in privity with them as well." *Id.*, 46 N.Y.2d at 486, 386 N.E.2d at 1332, 414 N.Y.S.2d at 311.

■ Acknowledging the protean aspect of the term, the New York courts nonetheless have defined privity as "a mutually successive relationship of the same rights to the same property." *Id.*, 46 N.Y.2d at 486, 386 N.E.2d at 1332, 414 N.Y.S.2d at 312; *see Downey v. Seib*, 185 N.Y. 427, 433, 78 N.E. 66, 67 (1906). Privity may be established for collateral estoppel purposes by the formal assignment of rights and/or obligations. *See Gramatan Home Investors, supra*, 46 N.Y.2d at 486–87, 386 N.E.2d at 1332, 414 N.Y.S.2d at 312. Privity may also arise from a nonparty's active participation in or control over a lawsuit. *See, e.g., Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 265 N.E.2d 739, 317 N.Y.S.2d 315 (1970).

■ In the context of successive lawsuits involving, respectively, insured parties and their insurance carriers, the New York courts have had little difficulty holding the insurance company to have been privy to a judgment entered against its insured in the first lawsuit, where the liability of the insured party was placed squarely at issue in that proceeding so as to have interested the carrier in obtaining a favorable outcome there. *See, e.g., Bonde v. General Sec. Ins. Co.*, 55 Misc.2d 588, 285 N.Y.S.2d 675 (S.Ct., Spec. Term, Albany County 1967); *Fadden v. Cambridge Mut. Fire Ins. Co.*, 51 Misc.2d 858, 274 N.Y.S.2d 235 (S.Ct., Spec. Term, Albany

N.Y.1983). Under New York's choice of law rules, the Court must look to the law of "the jurisdiction which, because of its relationship or contact with the occurrence or the parties [,] has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 191 N.E.2d 279, 283, 240 N.Y.S.2d 743, 749 (1963).

In the instant action, defendant is alleged to be incorporated in New York and to be a "domestic insurer" within the meaning of N.Y.Ins.Law § 107(a)(19). Complaint at ¶ 2. The accident that gives rise to the instant lawsuit occurred in New York. Furthermore, plaintiff's sole cause of action is for "first party benefits" allegedly due her under New York's comprehensive no-fault statute. Under these circumstances, New York unquestionably has the greatest concern with the matters at issue in the litigation, and therefore a New York court would undoubtedly apply its own substantive law to the issues raised herein.

County 1966), *aff'd*, 27 A.D.2d 487, 280 N.Y.S.2d 209 (3d Dep't 1967); *cf. Hinchey v. Sellers*, 7 N.Y.2d 287, 165 N.E.2d 156, 197 N.Y.S.2d 129 (1959) (insured, defendant in case at bar, held to have been in privity with insurer, defendant in prior action, and therefore could make defensive use of favorable judgment entered in earlier suit). In finding privity in these circumstances, the New York courts have relied principally on the existence of an indemnitor-indemnitee relationship between the insurer and insured. Moreover, the courts have held privity conclusively established where, in addition to indemnifying the insured for any losses it might sustain by virtue of a judgment entered against it in a judicial proceeding, the insurance company actually undertook the insured's defense in the original lawsuit. *See, e.g., Fadden, supra,* 51 Misc.2d at 860–61, 274 N.Y.S.2d at 239.[2]

In view of the foregoing, defendant's argument that the jury's findings in *Tolley I* can have no preclusive effect in this action because ATI was not a party to that litigation borders on the frivolous. Defendant concedes that the liability of its policyholder, GTC, was squarely at issue in *Tolley I.* Affidavit of Victor R. Rubin at 4 (sworn to Dec. 28, 1983). Moreover, ATI concedes that it retained counsel to represent GTC and Edwards, the driver of the cab, in the earlier lawsuit in fulfillment of its contractual obligation to GTC, and that its interests were "monetarily at parity with the insured defendants at the trial level." *Id.* at 4–5. Having conceded as much, defendant can scarcely argue here that it had no palpable interest in obtaining a favorable outcome for its insureds in *Tolley I.*

The Court concludes that, by virtue of the indemnitor-indemnitee relationship between ATI and GTC, and particularly in view of ATI's defense of GTC and Edwards in the prior suit, ATI was privy to the judgment entered in *Tolley I.* Defendant therefore may be precluded in this no-fault action from relitigating any issue that was necessarily determined in *Tolley I.* This assumes, of course, that the findings in *Tolley I* to which preclusive effect is to be given are identical to the issues underlying plaintiff's present claims for no-fault benefits. *See Kaufman, supra.* It assumes also that defendant had an opportunity in the earlier action to fully and fairly litigate the general question of damages. *See id.* The Court will examine these assumptions below in the context of plaintiff's specific claims for first-party benefits under the New York no-fault law.

### 2. Compensation Under New York's No-Fault Statute

Plaintiff, it will be recalled, seeks to recover approximately $48,000 in no-fault benefits from defendant in this action based upon certain of the jury's findings on damages in *Tolley I.* This amount, plaintiff argues, will compensate her for lost earnings and medical expenses which, she maintains, defendant is obligated to pay promptly and in full under New York's no-fault scheme.

The Comprehensive Motor Vehicle Insurance Reparations Act ("Act"), enacted by the New York legislature in 1973 and recodified in 1984 at N.Y.Ins.Law § 5101 *et seq.*, provides a means of compensating victims of automobile accidents without regard to fault. Under relevant provisions of the Act, the occupant of a vehicle insured in conformity with the Act who sustains injuries arising out of the operation of the vehicle is entitled to recover "first party benefits" from the insurance carrier to compensate for his or her "basic economic loss." *See generally* N.Y.Ins.Law § 5102.

---

**2.** These circumstances may be contrasted with cases in which a plaintiff in a personal injury action arising from an automobile accident has sought to have preclusive effect given to a favorable ruling in a prior no-fault proceeding brought against the defendant's insurer. In those circumstances, the New York courts have declined to invoke collateral estoppel because the defendants in the subsequent action, insureds rather than insurers, would have had no cognizable interest in the prior no-fault proceedings in which their liability was not in issue. *See, e.g., Compton v. D'Amore,* 101 A.D.2d 800, 475 N.Y.S.2d 463 (2d Dep't 1984); *Baldwin v. Brooks,* 83 A.D.2d 85, 443 N.Y.S.2d 906 (4th Dep't 1981).

"Basic economic loss" is defined in the Act as a combination of the following items up to $50,000:

(1) All necessary expenses incurred for: (i) medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services; (ii) psychiatric, physical and occupational therapy and rehabilitation; (iii) any non-medical remedial care and treatment rendered in accordance with a religious method of healing recognized by the laws of this state; and (iv) any other professional health services; all without limitation as to time, provided that within one year after the date of the accident causing the injury it is ascertainable that further expenses may be incurred as a result of the injury. For the purpose of determining basic economic loss, the expenses incurred under this paragraph shall be in accordance with the limitations of section five thousand one hundred eight of this article.

(2) Loss of earnings from work which the person would have performed had he not been injured, and reasonable and necessary expenses incurred by such person in obtaining services in lieu of those that he would have performed for income, up to one thousand dollars per month for not more than three years from the date of the accident causing the injury. An employee who is entitled to receive monetary payments, pursuant to statute or contract with the employer, or who receives voluntary monetary benefits paid for by the employer, by reason of the employee's inability to work because of personal injury arising out of the use or operation of a motor vehicle, is not entitled to receive first party benefits for "loss of earnings from work" to the extent that such monetary payments or benefits from the employer do not result in the employee suffering a reduction in income or a reduction in the employee's level of future benefits arising from a subsequent illness or injury.

(3) All other reasonable and necessary expenses incurred, up to twenty-five dollars per day for not more than one year from the date of the accident causing the injury. . . .

*Id.* § 5102(a). The "first party benefits" recoverable under the Act consist of a claimant's "basic economic loss" as defined above, less:

(1) Twenty percent of lost earnings computed pursuant to [N.Y.Ins.Law § 5102(a)(2) ].

(2) Amounts recovered or recoverable on account of such injury under state or federal laws providing social security disability benefits, or workers' compensation benefits, or disability benefits under article nine of the workers' compensation law, or medicare benefits, other than lifetime reserve days and provided further that the medicare benefits utilized herein do not result in a reduction of such person's medicare benefits for a subsequent illness or injury.

(3) Amounts deductible under the applicable insurance policy.

*Id.* § 5102(b).

As should be apparent, the reference in § 5102(a) to $50,000 signifies a *ceiling* on an individual's claim for "basic economic loss." Even assuming a claimant established a loss of $50,000 within the meaning of § 5102(a), that figure would then be the subject to any applicable deductions under § 5102(b) to yield the amount of "first party benefits" recoverable under the Act. In addition, both the language of § 5102(a) and the case law interpreting that provision make clear that, at least with respect to medical and other expenses defined in § 5102(a)(1) and (3), claimants may recover only for expenses they have actually incurred. *See* N.Y.Ins.Law § 5102(a)(1) & (3) (basic economic loss includes all necessary medical, and all other reasonable and necessary "expenses incurred"); *Goodkin v. United States*, 773 F.2d 19, 21–22 (2d Cir. 1985) (Act "designed to quickly reimburse injured parties, up to certain limits, for the common, *out-of-pocket* expenses generated by their injuries" and provides for reimbursement "due and payable *when the loss is incurred*") (emphasis added); *see, e.g., Perkins v. Merchants Mut. Ins. Co.*, 41

N.Y.2d 394, 361 N.E.2d 997, 393 N.Y.S.2d 347 (1977) (motorcyclist, injured in collision with automobile, held entitled to recover out-of-pocket medical and hospital expenses together with lost earnings as "first party benefits" under Act).[3]

With this background, the Court turns to plaintiff's claims for no-fault benefits, and the jury findings in *Tolley I* on which those claims are based. As previously stated, plaintiff contends that she is entitled to recover $47,906.39 from defendant as "first party benefits" under the Act, and argues that this amount is substantiated by the jury's answers to Special Interrogatory Questions 7 through 11 ("Special Interrogatories") on the verdict form in *Tolley I*. *See supra* at 1192–93. In answering those special interrogatories, it will be recalled, the jury in *Tolley I* found that plaintiff had sustained or would sustain lost earnings and medical expenses totalling $166,800. In addition, the parties in *Tolley I* had stipulated that by the time of trial plaintiff had already incurred $4,200 in medical expenses. Plaintiff therefore argues here that these facts amply establish her entitlement to $50,000 in first-party benefits (less

the $2,093.61 she has already been reimbursed for medical expenses incurred).

### a. Loss of Earnings

In determining the amount of lost earnings plaintiff may recover as first party benefits under § 5102, two statutory limitations must be kept in mind. First, such earnings are limited to $1,000 a month "for not more than three years from the date of the accident causing the injury." N.Y. Ins.Law § 5102(a)(2). Second, plaintiff may recover only eighty percent of such lost earnings as first party benefits, subject to any other deductions that may apply. *See id.* § 5102(b).

In view of the Act's explicit three-year limitation on recovery of lost earnings, only Special Interrogatories 7 and 8—pertaining to plaintiff's loss of earnings from the date of the accident, October 15, 1982, through October 15, 1985—are relevant to plaintiff's claim for lost earnings here. The Court further concludes that, based on the evidence adduced in *Tolley I* on plaintiff's loss of income, only the jury's answer to Special Interrogatory 7 should be given preclusive effect in this action.

3. *Cf. Maida v. State Farm Mut. Auto. Ins. Co.*, 66 A.D. 852, 411 N.Y.S.2d 386 (2d Dep't.1978) (notwithstanding New York insurance statute's requirement that payment of first party benefits be for expenses *incurred,* medical expenses would be *deemed* incurred and therefore recoverable from insurance carrier where victim had demonstrated continuing need for nursing services after carrier indicated it would deny further benefits for such services).

Plaintiff argues strenuously that the New York no-fault statute permits her to recover not only her past lost earnings and medical expenses already incurred, but future lost earnings and medical expenses as well. The only authority plaintiff cites that is even remotely on point, however, is *dictum* in a decision of the New York Supreme Court, Livingston County. *Hughes v. Nationwide Mut. Ins. Co.*, 98 Misc.2d 667, 414 N.Y.S.2d 493 (S.Ct., Livingston County 1979). There the court construed the phrase "loss of earnings performed from work," presumably derived from N.Y.Ins.Law § 5102(a)(2), to mean "wages actually paid, *or payable in the future.*" 98 Misc.2d at 671, 414 N.Y.S.2d at 496 (emphasis added). In *Hughes,* however, the plaintiffs had sought only *past* lost wages or profits, and the court there denied

plaintiffs *any* recovery of lost earnings for failure of proof.

Plaintiff's claim for "future" lost earnings has by now become moot. As the Court notes *infra,* plaintiff's recovery of lost earnings under the no-fault statute is limited to the three-year period following the accident that gave rise to the claimant's injuries. *See* N.Y.Ins.Law § 5102(a)(2). In plaintiff's case, that three-year period ended October 15, 1985, and therefore plaintiff's claim for lost earnings recoverable under the no-fault law may fairly be construed today to refer to past rather than future losses. With respect to plaintiff's remaining claim for future medical expenses, *Hughes, supra,* hardly provides palpable support for plaintiff's position. The language of the decision on which plaintiff hangs her argument was *dictum,* and did not even refer to medical expenses, but only to loss of earnings. Particularly where both the language of the statute and the case law applying it indicate that the New York legislature intended the no-fault statute to authorize reimbursement of *out-of-pocket* medical expenses *only,* the Court must reject plaintiff's argument that she should be allowed to recover medical or other expenses that she *anticipates* but has not yet *incurred.*

At trial in *Tolley I,* plaintiff testified concerning her income as a model and modeling instructor in 1980, 1981 and the first three-quarters of 1982. She testified further concerning the few jobs she had obtained since the automobile accident, and the numerous applications she had made—without success—through modeling agencies for work in commercials, at fashion shows, and in print. Plaintiff estimated that, because of the facial disfigurement she had suffered as a result of the 1982 accident, she lost jobs in the following year worth $8,800. (T. 237–40). On the basis of this estimate of lost earnings in 1982–83, plaintiff's counsel argued to the jury in summation that it could reasonably predict plaintiff's future lost earnings as a model would be roughly $5,000 a year for ten years. (T. 614) Consistent with plaintiff's testimony concerning her loss of earnings in the year following the accident, the jury found under Special Interrogatory 7 that she had lost $8,800 in income through October 15, 1983. *See supra* at 3. Roughly consistent with counsel's projection of her future lost earnings, the jury also found in Special Interrogatory 8 that plaintiff would lose $10,000 in income over the next two years, and in Special Interrogatory 9 that she would lose an additional $50,000 over the following ten years. *See id.*

For the Court to give preclusive effect in this action to the jury's findings in *Tolley I* on lost earnings for the three years following the 1982 accident, it must be satisfied that the factual issues presented to the jury in *Tolley I* on the question of lost earnings are identical to those that would inform the Court's determination here of plaintiff's "loss of earnings" under N.Y. Ins.Law § 5102(a)(2). *See Kaufman, supra,* 65 N.Y.2d at 455–56, 482 N.E.2d at 67, 492 N.Y.S.2d at 588. Deciding whether the issues litigated in two actions—the first based on common law principles of tort liability, the second arising under a statutory compensation scheme—are identical is not necessarily a facile task. A practical indicator of the identicality of issues raised in two judicial proceedings, however, is the manner in which the parties adduce evidence in the two cases on the relevant issues.

To the extent one expects the same type of proof to be offered at trial here on plaintiff's "loss of earnings" under the New York no-fault law as was presented to the jury on the issue of lost income in *Tolley I,* for example, there would be a reasonable basis for concluding that the issues raised in two actions are identical for collateral estoppel purposes. Invoking collateral estoppel under such circumstances plainly would advance the objectives of the doctrine, which are to reduce repetitive litigation and thereby conserve the resources of both the litigants and the Court. *See Kaufman, supra,* 65 N.Y.2d at 455, 482 N.E.2d at 67, 492 N.Y.S.2d at 588. On the other hand, if one expects entirely different evidence to be offered on loss of earnings in this action than was introduced in *Tolley I,* collateral estoppel undoubtedly should not apply. Under those circumstances, the difference in proof would raise a substantial question as to the identicality of issues raised in the two proceedings. Furthermore, it is far less likely that by litigating the issue of lost earnings in this action, the parties would be needlessly duplicating their own efforts or calling for duplicative fact finding by the Court.

■ Applying these considerations to the jury's findings in *Tolley I* on lost earnings, the Court is satisfied that the factual issue resolved by the jury in answering Special Interrogatory 7 is identical to one of the issues now before the Court in the instant action. In finding that plaintiff had lost $8,800 in earnings through October 15, 1983, the jury in *Tolley I* obviously credited plaintiff's testimony at trial as to the value of the modeling jobs she had lost in 1982 and 1983 because of her disfigurement. Were plaintiff to testify again in this proceeding with regard to her loss of earnings during the same period, the Court could conceivably give less weight to plaintiff's own appraisal of her marketability. However, the form of proof that would be submitted on the issue—plaintiff's own testimony—would doubtless be identical.

To permit the parties to relitigate the question of plaintiff's loss of earnings during the year following the accident in question would needlessly waste both the litigants' and the Court's resources, the very result that collateral estoppel should prevent. The Court therefore holds that defendant is precluded in this action from relitigating plaintiff's loss of earnings through October 15, 1983. Plaintiff has established for purposes of this action that she sustained a loss of earnings during that period of $8,800. Applying the twenty percent discount required under N.Y. Ins.Law § 5102(b)(1), the Court holds that plaintiff has demonstrated her entitlement to recover $7,040 from defendant as first party benefits under the Act.[4]

The Court reaches a different conclusion with respect to the jury's finding in *Tolley I* of lost earnings from October 15, 1983 through October 15, 1985. The jury's response to Special Interrogatory 8—that plaintiff would sustain $10,000 in lost earnings through October 15, 1985—was consistent with plaintiff's counsel's argument in summation that plaintiff could be expected to lose $5,000 a year in modeling income over the following ten years. However, the jury's estimate in 1983 of plaintiff's likely loss of income over the next two years was, of necessity, a *prediction* of *future* losses. In contrast, the finding the Court must make now as to plaintiff's loss of earnings through October 15, 1985 will be a determination of her *actual past* losses over the same two-year period.

It is conceivable that certain of the evidence before the jury in *Tolley I*—for example, plaintiff's testimony as to her modeling income before and after the 1982 accident, and as to her last job opportunities in 1982 and 1983—would be of some relevance to the Court's determination at this time of plaintiff's loss of earnings between October 15, 1983 and October 15, 1985. *Cf. Hollenbeck v. Nationwide Mut. Ins. Co.*, 64 A.D.2d 734, 406 N.Y.S.2d 610 (3d Dep't 1978) (summary judgment properly granted to plaintiff on issue of lost earnings recoverable as first party benefits where plaintiff had made undisputed showing of disability from work and level of salary paid at time of accident). It is more conceivable, however, that the Court would place greater weight on evidence that could *not* have been presented to the jury in *Tolley I*, namely, plaintiff's testimony and documentation concerning her *actual income* during the two-year period in question and the particular employment opportunities she would maintain she lost during that period as a result of her the 1982 injuries.

Because the Court anticipates that its determination in this proceeding of plaintiff's loss of earnings from October 15, 1983 through October 15, 1985 would rest largely on evidence that could not have been presented to the jury in *Tolley I*, and would in fact be a different sort of "finding" altogether (a determination of past rather than future lost income), the Court concludes that the issue resolved by the *Tolley I* jury in answering Special Interrogatory 8 is not identical to the issue of lost earnings now before this Court. The jury's answer to Special Interrogatory 8, therefore, will not be given preclusive effect here. Any finding as to plaintiff's loss of earnings under § 5102(a)(2) for the period between October 15, 1983 and October 15, 1985 must await the receipt of additional evidence at a hearing or trial on the merits.

---

**4.** Preclusive effect would not be given to the jury's finding in *Tolley I*, of course, if the Court were persuaded that defendant had not had a full and fair opportunity to litigate the matter in that proceeding. Defendant bears the burden of proof on this issue, however. *Kaufman, supra,* 65 N.Y.2d at 456, 482 N.E.2d at 67, 492 N.Y.S.2d at 588. Here, defendant makes only conclusory assertions of a lack of opportunity to litigate the question of damages in *Tolley I.* At most, ATI conjectures that the attorney it had retained on behalf of defendants GTC and Edwards in the prior action "was in a position to make determinations which *could* have gone against the carrier's interest." Defendant's First Memorandum at 12 (emphasis added). Without evidence of decisions retained counsel *actually made* in *Tolley I* that adversely affected ATI's interests, however, defendant simply has not sustained its burden of proof on the question of a "full and fair opportunity to litigate" in the prior action.

### b. Medical Expenses

Plaintiff's claim for medical expenses recoverable under the New York no-fault statute, it will be recalled, arises both from the parties' stipulation in *Tolley I* as to the medical expenses plaintiff already had incurred by the time of the trial, and from the jury's responses to Special Interrogatories 10 and 11. The final judgment entered in that case reflects the parties' stipulation to $4,200 in past medical expenses. Special Interrogatories 10 and 11 reflect the jury's findings that plaintiff would incur $3,000 in additional medical expenses attributable to the accident through October 15, 1985, and another $30,000 in medical expenses over the next fifty years. *See supra* at 3.

Unlike loss of earnings, which may be recovered under the New York no-fault law for a maximum of three years following the accident in question, medical and other "necessary expenses" attributable to injuries caused by the accident may be recovered over an unlimited period, "provided that within one year after the date of the accident causing the injury it is ascertainable that further expenses may be incurred as a result of the injury." N.Y.Ins.Law § 5102(a)(1). As previously noted, the Act was intended to compensate injured parties for the out-of-pocket expenses attributable to their injuries, and contemplates reimbursement as such expenses are incurred. *See supra* at 11–12.

█ The $4,200 in past medical expenses to which the parties stipulated in *Tolley I* undoubtedly fall within the category of "necessary expenses" reimbursable under § 5102(a)(1) and (b). Had such expenses actually been litigated and determined by the jury in *Tolley I*, they would most likely be given conclusive effect in this action as well. It is established, however, that is-

sues resolved by stipulation in a prior proceeding generally are considered to have been withdrawn from issue and therefore not "actually litigated and determined" for collateral estoppel purposes. *Kaufman, supra,* 65 N.Y.2d at 456–57, 482 N.E.2d at 68, 492 N.Y.S.2d at 589; *see* Restatement (Second) of Judgments § 27 comments d & e at 255–57 (1982).[5] Ironically, therefore, the medical expenses as to which there was no dispute in *Tolley I* were not "actually litigated" in that proceeding and therefore cannot be taken as established for purposes of this action by virtue of the parties' stipulation there.

Although no preclusive effect can be given in this case to the stipulation entered into by the parties in *Tolley I*, it goes without saying that the medical expenses plaintiff is entitled to recover as first party benefits under the Act are a proper subject for stipulation in this proceeding. In this regard, the Court strongly encourages the parties to attempt to stipulate to the medical expenses plaintiff has incurred to date (including those stipulated to in *Tolley I* ) as a result of the injuries she suffered in the 1982 accident. Absent such a stipulation, plaintiff will be required to produce evidence of such expenses at a hearing or trial in order to recover.

█ As the previous discussion of lost earnings should indicate, plaintiff can gain little in this action from the jury's findings in *Tolley I* concerning the medical expenses she was likely to incur in the future as a result of the 1982 accident. Special Interrogatory 10 asked the jury to predict plaintiff's medical expenses over roughly the two years following trial; Special Interrogatory II required the jury to project plaintiff's medical costs beyond those two years. In both instances, the jury's task in *Tolley*

---

**5.** The Restatement indicates that a stipulation *may* be binding in a subsequent action if the parties had manifested an intention to that effect. Restatement (Second) of Judgments § 27 comment e at 257. Neither party here has addressed the issue of the intent of the parties in *Tolley I* with respect to their stipulation to plaintiff's past medical expenses. On the record before it, the Court is unwilling to presume intent

on ATI's part to be bound in subsequent proceedings by the terms of the stipulation entered into in *Tolley I* simply by virtue of ATI's having undertaken the defense of GTC and Edwards in that earlier action. For purposes of the instant motions, therefore, the Court follows the general rule that stipulations are not entitled to preclusive effect in subsequent actions between the parties (or their privies).

*I* was to *anticipate* plaintiff's *future* medical needs and the expenditures that would follow. In contrast, the Court's task in the present no-fault action is to *verify* medical expenses plaintiff has *in fact* incurred as a result of her 1982 injuries. Because the factual determinations left for the fact-finders in the two proceedings are different, the jury's findings on medical expenses in *Tolley I* can have no preclusive effect here.

On this issue, one need only contrast the evidence before the jury in *Tolley I* with the proof that undoubtedly would be offered in this action on the question of medical expenses. The evidence on which the jury in *Tolley I* could have based its findings as to plaintiff's future medical expenses includes plaintiff's own testimony concerning the extent of her injuries and the medical treatment she had already received, and the expert testimony of two dentists who had examined plaintiff and offered opinions as to the additional medical treatment she would probably require in the future. In contrast, the most probative evidence plaintiff can offer in this action to substantiate her claims for reimbursement of medical costs *already* incurred will be on the order of prescription receipts, hospital invoices, doctor's bills, and the like. Such evidence was not before the jury in *Tolley I,* either because the parties had stipulated to the medical expenses plaintiff had incurred already, or because the documentation of plaintiff's future medical costs did not yet even exist.

The issues presented to the jury in *Tolley I* concerning plaintiff's likely medical expenses in the future are not the same as those now before this Court concerning medical expenses plaintiff has in fact incurred. Thus, the jury's findings in *Tolley I* regarding plaintiff's future medical expenses—even for the period that has since elapsed—have no bearing on the factual questions presented in this case and will not be given preclusive effect. To establish her entitlement under the New York no-fault statute to reimbursement for medical or other "necessary expenses" within the meaning of N.Y.Ins.Law § 5102(a)(1),

plaintiff will be required to present credible evidence of such outlays at a hearing or trial (unless, of course, the parties can stipulate to some or all of such expenses).

## CONCLUSION

Because defendant was privy to the judgment entered after a jury trial in *Tolley I,* it is precluded from relitigating in this action any issues conclusively determined there. However, the only issue determined by the jury in *Tolley I* that is identical to an issue before this Court in the present action for "first party benefits" under the New York no-fault law is that of plaintiff's loss of $8,800 in earnings in the year following the automobile accident in question. Discounted by twenty percent as required under N.Y.Ins.Law § 5102(b)(1), this loss of earnings entitles plaintiff to $7,040 in "first party benefits," subject to any other deductions that may apply. The remainder of plaintiff's claims against defendant for loss of earnings and for medical and other "necessary expenses" recoverable under the no-fault statute, as well as interest and reasonable attorney's fees to which plaintiff may be entitled under N.Y.Ins.Law § 5106(a), cannot be established on the basis of the jury verdict and judgment entered in *Tolley I,* but must be proven by independent evidence.

Accordingly, the instant cross-motions are granted in part and denied in part. The parties are directed to communicate in writing with the Court by August 8, 1986 concerning their readiness for trial and the extent to which some or all of the factual issues remaining may be resolved by stipulation or at an evidentiary hearing.

It is so ordered.