Gary P. FRAZIER and Kimberly Frazier, Plaintiffs,

v.

ROYAL INSURANCE COMPANY OF AMERICA, Defendant.

No. 99–CV–0272.

United States District Court, N.D. New York.

Aug. 16, 2000.

The Law Office of Christopher P. Rutnick, Albany, NY (Thomas P. McQuade, of counsel), for plaintiff.

Clemente, Mueller & Tobia, P.A., New York City (William F. Mueller, of counsel), for defendant Royal Insurance.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. *INTRODUCTION*

Plaintiffs Gary P. Frazier and Kimberly Frazier commenced this action on January 19, 1999, in Supreme Court of the State of New York, Saratoga County, against the defendant, Royal Insurance Company of America ("Royal Insurance," "company," or "insurer"), arising from an arbitration award and judgment against the company's insured, Wilfred Daigle & Son, Inc. ("Daigle" or "insured"), which remains unpaid. On February 24, 1999, the defendant filed a petition for removal pursuant to 28 U.S.C. §§ 1441 and 1446. Jurisdiction is based upon diversity of citizenship.

*See* 28 U.S.C. § 1332. An amended complaint and answer to the amended complaint were subsequently served.

Plaintiffs have moved for summary judgment pursuant to Fed.R.Civ.P. 56. Defendant cross-moved for summary judgment dismissing the complaint. Oral argument was held on April 28, 2000 in Albany, New York. Decision was reserved.

## II. *FACTS*

The basic facts are not in dispute. In May 1992 plaintiffs hired Daigle for the construction of a residential home. In September 1992, shortly after moving in, plaintiffs discovered numerous problems with the house, including cracks in the walls, ceilings, floors, foundation, and exterior deck. Plaintiffs also observed that the foundation of the house appeared to be sinking. These damages worsened during the following three months, and plaintiffs found further cracks in the walls and foundation, racking of door frames, dipping of floors, and separation of a gas line. Daigle purported to repair the damage, and claimed the house was merely settling. Daigle, however, failed to rectify the problems.

At all relevant times, Daigle was insured by Royal Insurance with a general liability policy. The policy states that "if a claim is made or suit is brought against an INSURED for BODILY INJURY or PROPERTY DAMAGE caused by an OCCURRENCE to which this coverage applies, WE will … pay damages for which the INSURED is legally liable up to the limit of insurance." (McQuade Aff.Ex. Q.) An occurrence is defined in the policy as "an accident, including continuous or repeated exposure to the same conditions, which results in BODILY INJURY or PROPERTY DAMAGE which the insured neither expected nor intended to happen." *Id.* The policy defines property damage as "physical injury to tangible property, which occurs during the policy period, including the loss of use of that property; or

loss of use of tangible property which has not been physically injured if the loss of use results from physical injury to tangible property which occurs during the policy period." *Id.*

After numerous failed attempts to have Daigle repair the damages, plaintiffs consulted an engineer in May 1996 in order to determine the cause of the damage. The engineer examined the premises and prepared a written report. By letter dated June 21, 1996, plaintiffs gave notice of a breach of warranty against Daigle. (Mueller Aff.Ex. B.) A Notice of Claim dated July 12, 1996 which included a copy of the June 21, 1996 letter was forwarded to Royal Insurance. *Id.* Ex. C. In addition, plaintiffs' attorney contacted the company and notified a claims adjuster of the damage to plaintiffs' home. Plaintiffs provided Royal Insurance with a copy of its engineer's report. In response, with plaintiffs' consent, the company selected its own engineer who inspected the premises on August 2, 1996, and issued a report. Royal Insurance's engineer confirmed the findings made by plaintiffs' engineer. (McQuade Aff.Ex. H.) The company informed plaintiffs' attorney by letter dated August 22, 1996, that "our investigation is ongoing at this time." *Id.* Ex. F. On or shortly after November 22, 1996, a claims specialist from the company contacted plaintiffs' attorney and made an offer of settlement, which was rejected.

On November 26, 1996, plaintiffs served Daigle with a demand for arbitration pursuant to their agreement, again characterizing the dispute as breach of warranty. Royal Insurance was served with the notice of the arbitration, including the documents which plaintiffs intended to submit. *See id.* Ex. I. The company did not respond to the plaintiffs. Instead, on or about January 16, 1997, it sent its insured a six (6) page letter, (Mueller Aff.Ex. F), disclaiming coverage because the arbitration claims were

[C]ontractual and do not fall within the insuring language of your policy with our company ... Breach of Warranty claims are not property damage caused by an occurrence as defined by your policy. Further, the above quoted exclusion would further negate coverage to your company related to this loss. The home is considered your product and/or your work.

*Id.* The letter went on to state that "if you or anyone receiving this letter has any concerns or questions, please do not hesitate to contact the undersigned." *Id.* Other than Daigle, the people having the most concern about the disclaimer would have been the plaintiffs. Royal Insurance did not send a copy of the letter to the plaintiffs or inform them of its position.

Arbitration proceedings commenced between the plaintiffs and Daigle. Royal Insurance did not participate. The report generated by plaintiffs' engineer, as well as the report of the engineer hired by the company, were submitted to the arbitrator. The arbitrator's written decision of September 8, 1997 states that plaintiffs' "home is sinking due to the negligence of [Daigle]. The sinking of the home has caused extensive property damage to the home." (Mueller Aff.Ex. G.) An award in favor of plaintiffs was rendered in the sum of $136,-660.50. *Id.* On September 15, 1997, the arbitration award was sent to the company. The company did not respond.

In March 1998, plaintiffs commenced a proceeding in New York State Supreme Court, Saratoga County, pursuant to N.Y. C.P.L.R. § 7510 to confirm the arbitration award. On April 6, 1998, plaintiffs served upon the company a copy of the Notice of Petition and Petition to confirm the arbitration award. *Id.* Ex. H. This time, Royal Insurance did respond. First, on April 28, 1998, an adjuster telephoned the plaintiffs' attorney and for the first time advised the plaintiffs that the company had, over fifteen months before, disclaimed coverage to its insured. Next, Royal Insurance retained counsel and the return date of the petition was adjourned with the consent of plaintiffs' attorney. By letter dated May

15, 1998, counsel for the defendant wrote to the presiding Supreme Court Justice and stated that Royal Insurance would not participate because it "was not a party to the arbitration." (McQuade Aff.Ex. P.) The letter did not advise the presiding Justice that it had disclaimed coverage. *Id.*

On May 20, 1998, two days prior to the return date of the petition, Royal Insurance for the first time sent plaintiffs a copy of its letter (dated January 16, 1997) to Daigle disclaiming coverage. *Id.* Ex. Q. After plaintiffs' attorney wrote a responsive letter to the court, by letter dated May 21, 1998, defendants's counsel advised the presiding justice that Royal Insurance had disclaimed coverage on January 16, 1997. (Mueller Aff.Ex. I.) Royal Insurance again asserted that they could not be bound by the court's determination and requested that "the Court compel [Plaintiffs] to settle the order on notice." *Id.*

Plaintiff's attorney appeared on the return date of the petition and there was no opposition. The arbitrator's award of damages in the amount of $136,660.50 was confirmed and a judgment against Daigle in the amount of $136,905.50 was entered on July 10, 1998, in the Saratoga County Clerk's office. (McQuade Aff.Ex. T.) Plaintiffs served a copy of the judgment upon Royal Insurance. *Id.* Ex. U. The judgment remains unsatisfied.

## III. *DISCUSSION*

### A. *Jurisdiction*

Jurisdiction over this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.

### B. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir.1999). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Richardson*, 180 F.3d at 436; *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *See Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

### C. *Choice of Law*

A federal court sitting in diversity must apply the law of the forum state, including that state's choice of law principles. *See Tolley v. American Transit Ins. Co.*, 638 F.Supp. 1191, 1193 n. 1 (S.D.N.Y. 1986) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). In New York, a court

must apply the law of the state "which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." *Id.* (citing *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963)).

Here both parties agree that this action is governed by New York law. The plaintiffs are New York residents; the insured is a New York corporation; and the underlying cause of action was based on conduct which occurred in New York. Accordingly, the law of the State of New York will be applied.

### D. *Liability*

■ New York Insurance Law § 3420 requires that every liability policy issued in New York State contain certain provisions "which are equally or more favorable to the insured and to judgment creditors," including the following:

> [A] provision that in case judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may ... be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.

New York Ins. Law § 3420(a)(2) (McKinney 1985).

Prior to the enactment of the above statute (and its predecessors), a judgment creditor in a negligence action possessed no cause of action against the insurer of the tortfeasor because of lack of privity. The legislature enacted this remedial statute in order to rectify this situation and its "attendant injustice." *See Jackson v. Citi-*

*zens Cas. Co.,* 277 N.Y. 385, 389, 14 N.E.2d 446 (1938); *Gewirtz v. State Farm Mut. Auto. Ins. Co.,* 170 Misc.2d 600, 601, 651 N.Y.S.2d 267 (1996). Accordingly, pursuant to § 3420(a)(2), plaintiffs have an independent right to proceed directly against Royal Insurance. No assignment of rights is necessary, as argued by Royal Insurance.

Here, plaintiffs have demonstrated compliance with the elements set forth above. There is no dispute that Daigle had a policy in effect at the relevant time, issued by Royal Insurance, which provided coverage for property damage. The arbitrator in the underlying action expressly determined that the property damage at plaintiffs' home occurred because of the insured's negligence. This judgment was confirmed and entered in the Saratoga County Clerk's Office on July 10, 1998. It is undisputed that a copy of the judgment was served upon Daigle, as well as Royal Insurance, and the judgment has remained unsatisfied for over thirty days.

In addition, "New York courts have had little difficulty holding the insurance company to have been privy to a judgment entered against its insured in the first lawsuit, where the liability of the insured party was placed squarely at issue in that proceeding so as to have interested the carrier in obtaining a favorable outcome there." *Tolley,* 638 F.Supp. at 1194. Accordingly, it is well established that in a subsequent action against the insurer, the insurance company cannot "go behind the [underlying] judgment and raise defenses going to the merits of the plaintiff's claim against the [insured]." *Dimartile v. Country–Wide Ins. Co.,* 86 Misc.2d 36, 38, 381 N.Y.S.2d 579 (1975), *aff'd,* 51 A.D.2d 869, 379 N.Y.S.2d 684, 685 (4th Dep't 1976) (citation omitted); *see also Matychak v. Security Mut. Ins. Co.,* 181 A.D.2d 957, 958–59, 581 N.Y.S.2d 453 (3d Dep't 1992) (citing cases).

■ Based on the above case law, Royal Insurance cannot be heard to contest that

its insured negligently caused property damage to plaintiffs' home. Nor does the fact that the company disclaimed any obligation to its insured before the underlying arbitration was completed exempt it from the findings made therein, including the amount of damages. *See Matychak*, 181 A.D.2d at 958, 581 N.Y.S.2d 453 (stating that "having disclaimed its duty to defend [the insured] in the underlying action, defendant assumed the risk as to what might be proven against [the insured]").

■ Royal Insurance correctly points out, however, that the underlying arbitration did not determine whether coverage for plaintiffs' damages exists under the policy issued to Daigle. The company takes the position that no coverage existed for the property damage because plaintiffs sued Daigle under a breach of warranty theory which was not covered under the policy. Plaintiffs argue that the fact that the arbitrator found negligence and property damage was sufficient to establish coverage under the language of the policy. Regardless of whether coverage properly existed or not, under the particular facts of this case Royal Insurance is estopped from denying coverage.

■ Although § 3420(d) of the Insurance Laws, mandating a prompt written disclaimer to the injured party as well as to the insured,[1] does not apply in cases involving property damage, "[t]he doctrine of equitable estoppel can be applied to prevent an insurer from asserting valid defenses or exclusions to coverage." *Mattimore v. Patroon Fuels, Inc.*, 103 A.D.2d 981, 982, 479 N.Y.S.2d 839 (3d Dep't 1984). The plaintiffs must show that they have been prejudiced by the insurer's actions and/or that they relied on some conduct by the insurer to their detriment. *See id.; Incorporated Village of Pleasantville v. Calvert Ins. Co.*, 204 A.D.2d 689, 690, 612 N.Y.S.2d 441 (2d Dep't 1994); *Hartford*

*Ins. Group v. Mello*, 81 A.D.2d 577, 578, 437 N.Y.S.2d 433 (2d Dep't 1981). Under New York law, therefore, an insurer's failure to provide a written disclaimer within a reasonable time may warrant estoppel on common law grounds, as well as by statute. *See, e.g., Mount Vernon Fire Ins. Co. v. NIBA Constr. Inc.*, 195 A.D.2d 425, 428, 600 N.Y.S.2d 936 (1st Dep't 1993) (concurring opinion, J. Sullivan) (stating that "under common law principles, unreasonable delay by the insurer in disclaiming coverage will work an estoppel if prejudice to the insured or third-party claimant can be shown to have resulted from the delay.").

■ In the instant matter, plaintiffs or their representative had discussions with Royal Insurance regarding the property damage caused by Daigle and plaintiffs' claim in July 1996. Although it was clear from these initial conversations that Daigle was responsible, if at all, to plaintiffs based solely upon breach of warranty under contract, the company did not immediately disclaim coverage. Rather, it waited over six months to disclaim coverage to its insured (Daigle), and over twenty-one months to the injured parties (plaintiffs).

Instead of immediately disclaiming coverage, it requested the opportunity to inspect the premises with its own engineer. It then exchanged engineering reports with plaintiffs. It directly informed plaintiffs in writing that it was investigating the matter. Following the report issued by its own engineer, Royal Insurance offered to settle the claim with plaintiffs. The plaintiffs relied on all of the above when they quite properly assumed there was coverage for their losses.

Plaintiffs then pursued arbitration, again affording Royal Insurance notice that they were proceeding on a breach of warranty theory, and sending copies of all documents submitted to the arbitrator, includ-

---

1. Section 3420(d) of the Insurance Laws mandates "written notice [of disclaimer] as soon as is reasonably possible" to both the insured and the injured party, such that failure to provide such disclaimer warrants liability against the insurer whether or not the injured party was prejudiced by this omission.

ing the report of the company's own engineer. Despite the company's knowledge that plaintiffs were the real parties in interest with respect to the insured's insurance policy, and the fact that their home had suffered substantial damage, it still failed to give them any notice that there was no coverage for their loss. After the arbitrator's determination was made in September 1997, plaintiffs petitioned to confirm the award into a judgment in the Saratoga County Supreme Court, again giving Royal Insurance notice of their action. Finally, on May 20, 1998, for the first time, the plaintiffs received written notice that the company had disclaimed coverage in January 1997, due to their initial characterization of the claim as breach of warranty which would automatically preclude coverage to their insured. A copy of the January 16, 1987 disclaimer letter was also sent to plaintiffs' attorney. Royal declined to participate in the confirmation proceedings, and judgment was entered against their insured on July 10, 1998.

For nearly two years, from June or July 1996 to April 1998 (oral notice) or May 1998 (written notice), plaintiffs believed that Royal Insurance was providing its insured with coverage which would cover their losses. Plaintiffs clearly relied on their initial interaction with the company regarding responsibility for the damage to their property; and to their detriment, pursued an extended course of correspondence, inspections, exchange of reports, settlement negotiations, arbitration, and litigation during which time they incurred costs and expenses. Relying on representations by Royal Insurance, plaintiffs also failed to take additional steps such as securing Daigle's assets. The company cannot turn a blind eye and keep the plaintiffs in the dark about its position for almost two years and expect to avoid responsibility. Royal Insurance had an obligation of fair dealing, and the plaintiffs were clearly prejudiced by its actions.

**2.** See N.Y. C.P.L.R. § 5004 (McKinney 1992).

In addition, the policy at issue here obviously covers property damage, and as such it was reasonable for plaintiffs to expect that their claim would be covered. Until they received a copy of the company's disclaimer letter to its insured (over sixteen months after the event), plaintiffs never knew that the terms and conditions of Daigle's policy might exclude their particular damage or loss. Considering all of the above, Royal Insurance's delay in disclaiming coverage to plaintiffs was unreasonable. Therefore, whether or not there was coverage need not be determined.

## IV. *CONCLUSION*

The failure of Royal Insurance to give written notice or inform the plaintiffs in any manner that there was no coverage afforded to its insured, from their initial claim in June 1996 to April or May 1998, constitutes an injustice by which it is now estopped from denying coverage for the property damage caused by the negligence of the insured, Daigle.

Accordingly, it is

ORDERED that

1. Plaintiffs Gary P. Frazier and Kimberly Frazier's motion for summary judgment is GRANTED;

2. Defendant Royal Insurance's cross-motion for summary judgment is DENIED;

3. The Clerk is directed to enter judgment in favor of the plaintiffs Gary P. Frazier and Kimberly Frazier against the defendant Royal Insurance Company of America in the sum of One-hundred thirty-six thousand nine-hundred five and $^{50}/_{100}$ Dollars ($136,905.50), plus interest from July 10, 1998, in the sum of Twenty-six thousand nine-hundred fifty-five and $^{23}/_{100}$ Dollars ($26,955.23)[2] for a total of One-hundred sixty-three thousand eight-hundred sixty and $^{73}/_{100}$ Dollars ($163,860.73); and

4. The plaintiffs are awarded costs and disbursements.

IT IS SO ORDERED.